should be modified in the particular above mentioned and in all other respects that the same must be affirmed.

It is, therefore, ordered that the Circuit judgment be modified in accordance with the terms of this opinion and that the cause be remanded to the Circuit Court for such action as may be necessary to conform the Circuit judgment to the conclusions herein announced.

---

8025

ROWE v. MOORE.

WILLS—LIMITATION OF ESTATES.—A devise to my daughter M. "for and during her natural life, and then absolutely to the heirs of her body forever," the daughter having one child alive, construed here to give the daughter only a life estate. The words "heirs of the body" considered in connection with the same terms in other items of the will, construed to mean "children."

Before SHIPP, J., Marlboro, May, 1911. Affirmed.

Action by Martha Moore Rowe against Marvin W. Moore and Walter S. Rowe, Jr. Plaintiff appeals.

The Circuit decree is: "This is an action for specific performance heard by me at chambers while presiding in the fourth circuit at Dillon, S. C., at the March term of Court, 1911. The hearing at chambers was consented to by all parties interested in the action; the plaintiff was represented by her counsel, Knox Livingston, Esq., and the defendant, Marvin W. Moore, by his counsel, J. W. LeGrand, Esq., and the infant defendant was represented by his guardian *ad litem,* Walter S. Rowe.

"Oral arguments on the questions presented by the pleadings, and printed briefs containing points and authorities, were submitted to me by counsel on both sides. On account

of the importance of the questions presented, I reserved my opinion, until this Saturday, the 13th day of May, 1911. This is an agreed case and has resolved itself into a legal question, and involves only the construction of the will of Milton A. J. Moore, who, according to the proceedings, departed this life in the county of Marlboro, State of South Carolina, on the 8th day of February, 1903, leaving of full force and effect, his last will and testament, of which his widow, Alice G. Moore, and his brothers, J. D. and J. A. W. Moore, were nominated executors, all of whom thereafter qualified and entered upon the discharge of their duties as such executors.

"The plaintiff and the defendant, Marvin W. Moore, are children of the testator, and the infant defendant, Walter S. Rowe, Jr., is the only child of the plaintiff. By item ten of his last will, Milton A. J. Moore devised certain real estate therein described, to his daughter, Martha Moore, (now Rowe).

"On the 12th day of January, 1911, a written agreement was entered into, between Martha Moore Rowe, and the defendant, Marvin W. Moore, by the terms of which, Martha Moore Rowe, agreed to convey 'or secure to be conveyed unto the said Martha W. Moore, his heirs and assigns forever, by a good and indefeasible title in fee simple, free from all incumbrance, "all that certain piece, parcel or tract of land, lying and being situate in the county of Marlboro, in the State aforesaid, containing one hundred and twenty-six acres, more or less, bounded by the public highway leading from Bennettsville to Cheraw, and by lands of said Marvin W. Moore—this being the same tract of land devised in and by the last will and testament of her father, the late Milton A. J. Moore, to the said Martha Moore Rowe, and is designated on a general plat of the land of said testator made by J. R. Parker, surveyor, as tract No. 3 of the McCollum lands.' "

"The consideration of such purchase was fifteen thousand ($15,000.00) dollars, to be paid as set forth in the agreement, but the details of such agreement being immaterial for the decision of the question to be determined by this Court, I will refrain from quoting the same.

"After the agreement was executed by both parties, and on the —— day of January, 1911, the plaintiff executed in due form under her hand and seal, a title to the premises agreed to be conveyed, and tendered the same to the defendant, Marvin W. Moore, who refused to accept the deed, claiming as his reason for such refusal, that the plaintiff, Martha Moore Rowe, did not receive any greater than a life estate under item ten of her father's will, and therefore, could not convey to him; a good and indefeasible title, in fee simple, free from all incumbrance, to the property agreed to be conveyed.

. "It appears that the defendant, Marvin W. Moore, is willing to carry out his agreement, provided a good and indefeasible fee simple title to the premises can be made to him by the plaintiff. Upon the refusal of Marvin W. Moore, to accept the title offered, this consent action for specific performance was commenced.

"By agreement, 'the question and only question submitted to the determination and judgment of the Court is, "Can the plaintiff, Martha Moore Rowe, convey said tract or parcel of land, by good and valid deed in fee simple, she having issue of her body still living? If *yea,* then the Court will decree the specific performance of said contract on the part of the defendant, the said Marvin W. Moore, upon the delivery to him of the warranty deed of said Martha Moore Rowe, for said tract or parcel of land. * * *' "

"The property which is the subject of this action was devised to plaintiff by item ten of Milton A. J. Moore's will, and the plaintiff contends that this item is complete in itself, and does not necessitate the construction of any other part of the will of Milton A. J. Moore, in order to ascer-

tain its meaning, and that by this item she received a fee conditional estate under the rule in Shelley's case, and upon the birth of issue, to wit, Walter S. Rowe, Jr., such estate was raised to a fee simple, and that she now has full right and power in herself, to convey the premises devised to her in item ten by an indefeasible fee simple title.

"Item ten of the will is as follows: 'I will and devise unto my daughter, Martha Moore, for and during her natural life, and then absolutely to the heirs of her body forever, one hundred and twenty-six acres of the McCollum lands, known on plat of Parker, as No. 3.'

"The defendant, Marvin W. Moore, contends that the words 'heirs of her body' in item ten means children, and that this can be easily understood by construing the entire will, and that to hold that item ten is complete in itself, will defeat the manifest intention of the testator, and will thereby place a strict construction on the words, 'heirs of her body,' whereas, it will appear from a construction of the entire will and codicils attached thereto, that it was clearly the intention of the testator that the words 'heirs of her body' should mean children; it is manifest that the words 'heirs of her body,' were used to represent children in item ten of the will.

"Such part of item three as is material to the construction of item ten, is as follows: 'After the death of my wife, I will and devise the said one hundred and fourteen acres of land unto my son, John Milton Moore. Also on his reaching the age of twenty-one years, I also will and devise to him, fifty acres of the Webster lands, and fifteen acres of the land purchased from A. W. Moore, and the thirty-two acres of land bought from Mrs. E. C. Moore, to have and to hold to my said son, for and during his natural life, and then to the heirs of his body forever, the child or children of one of his children dead, to take the share of his or their parent.'

"It is clear to my mind that the testator used the words 'heirs of the body' in the sense of children in item three, and it would be against reason to hold that the testator used the words 'heirs of his body' in the sense of children in item three, and in other items of the same will in making devises to others of his children, uses the words 'heirs of her body' in any other sense than that of children. Items four, five and six give to each party named therein, absolute estates, of this fact, there can be no doubt. Items seven, eight, nine, eleven and twelve are identical with item ten, with the exception that in some of said items the word 'absolutely' precedes the words 'heirs of the body,' while in others this word is left out. The word 'absolutely' is used in item ten. While this word taken alone does not aid in evincing the intention of the testator, to use the words, 'heirs of the body' in the sense of children, still when construed in connection with all other parts of the will, this word does tend to strengthen the contention that it was the purpose of the testator to create under item ten a life estate only, and not a fee conditional.

"In item thirteen it will be observed that the testator said 'it is my will and intention, that *none* of my children taking only a life estate *under any of the foregoing items,* shall have any power to incumber or dispose of same, and that any incumbrance or conveyance on *their* part, shall be absolutely null and void.'

"The words *none, under any of the foregoing items,* and *their,* used in item thirteen just quoted, all refer to more than one child, and to more than one life estate.

"It can be easily understood from reading the entire will, that the testator used the words 'heirs of her body' in items three, seven, eight, nine, ten, eleven and twelve, as meaning children, otherwise item thirteen is absolutely without force or effect.

"This Court said in the case of *Weathersbee* v. *Weathersbee,* 82 S. C., page 10: 'Here, as in every case, the busi-

ness of the Court is to ascertain from the whole instrument, the intention of the maker. That ascertained, it must be executed if lawful.'

"In *Vaughan* v. *Bridges*, 61 S. C., page 164: 'For after all, the cardinal rule for the construction of a will, is to seek for the intention of the testator, as disclosed by the language which he used.' I might quote a number of other authorities for the position just taken, but I deem it unnecessary.

"It is true that the rule in Shelley's case is still binding authority in South Carolina, but when it appears that the words 'heirs,' 'heirs of the body,' 'or issue' are so qualified by additional words in the will, as to evince an intention, that they are not to be taken as descriptive of an indefinite line of descent, but are used to indicate a new stock of inheritance, the rule in Shelley's case does not apply.

"Upon consideration of the entire will and codicils of Milton A. J. Moore, and after giving due weight to the contentions of the plaintiff, and the defendant, Marvin W. Moore, as set forth in the pleadings in this action, and for the reason herein given, I hold that the testator, Milton A. J. Moore, used the words, 'heirs of her body' in item ten of his will in the sense of children, and that Martha Moore Rowe received a life estate and nothing more, in the property devised to her in said item ten, with the remainder to her children and that she cannot convey to the defendant, Marvin W. Moore, a good and indefeasible title, in fee simple to the said property, and that said Martha Moore Rowe cannot comply with her part of the agreement, and I, therefore, refuse to compel specific performance on the part of the defendant, Marvin W. Moore."

*Mr. Knox Livingston,* for appellant, cites: *The rule in Shelley's case applies here:* 8 Rich. Eq. 10; 3 Hill 193; 67 S. C. 134; 1 Rich. Eq. 404; 2 Strob. Eq. 190; 3 Rich. Eq. 384; 52 S. C. 554. *Upon birth of issue the fee conditional*

*is raised to a fee simple:* 5 Rich. Eq. 449; 3 Rich. 271; 77 S. C. 231; 1 Rich. Eq. 404; 3 Rich. Eq. 384; 25 Strob. Eq. 190; 48 S. C. 440; 52 S. C. 554; 67 S. C. 118; 69 S. C. 292.

*Mr. J. W. LeGrand,* contra, cites: *The meaning of "heirs of body" is always open to inquiry:* 23 S. C. 46. *Will is to be construed by seeking intention of testator:* 59 S. C. 148; 10 S. C. 363; 61 S. C. 164; 26 S. C. 464, 181; 82 S. C. 10.

November 1, 1911. The opinion of the Court was delivered by

MR. JUSTICE GARY. For the reasons therein stated, the judgment of the Circuit Court is affirmed.

---

### 8026
### BUSBEE v. WESTERN UNION TELEGRAPH CO.

1. TELEGRAPH COMPANIES—WILFULNESS—ISSUES.—Where there is evidence tending to show a message was delivered to the carrier to be transmitted to a point at which the agent informed the sender there was no office, and that it was agreed to send it to an office near and deliver by special messenger, the relay office called attention of agent of sending office that there was an office at point of destination, and these two agents agreed to send to the office of destination, at which point no agent could be called during office hours, no effort having been made to deliver in the manner directed by sender, the issues of wilfulness and recklessness were properly sent to the jury.

2. IBID.—MENTAL ANGUISH.—Where there was proof that if a telegram had been delivered in due time, the addressee could have attended the funeral of her aunt, between whom there was close ties, the issue of damages for mental anguish was properly sent to the jury.

3. CHARGE.—A judgment will not be reversed for an irrelevant instruction unless the record furnishes good reason to suppose that the verdict was affected by it.